ADRIENNE RODRIGUEZ,

                             Plaintiff,

        - versus -

THE CITY OF NEW YORK; RAYMOND W. KELLY, as Police Commissioner; CHARLES V. CAMPISI, as Bureau Chief, Internal Affairs Bureau; PHILLIP ROMANZI, as Deputy Inspector, Internal Affairs Bureau; DAVID ZIMMER, as Deputy Inspector, Internal Affairs Bureau; MICHAEL TATE, as Captain, Internal Affairs Bureau and WILLIAM ASSINGER, as Lieutenant, Internal Affairs Bureau, each being sued Individually and in their official capacities as employees of defendant THE CITY OF NEW YORK,

                             Defendants.

MEMORANDUM
AND ORDER
13-CV-6552 (JG)

A P P E A R A N C E S:

       THE SANDERS FIRM, P.C.
           1140 Avenue of the Americas, 9th Floor
           New York, NY 10036
       By:    Eric Sanders
           *Attorney for Plaintiff*

       ZACHARY W. CARTER
           Corporation Counsel of the City of New York
           100 Church Street, Room 2-171
           New York, NY 10007
       By:    Ricardo Tapia
           *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

       Adrienne Rodriguez has brought this claim against several defendants for various violations of her civil rights while employed as a police officer by the City of New York.

Defendants have moved under Rule 12(b)(6) to dismiss her claims. For the reasons that follow, the complaint is dismissed.

BACKGROUND

Rodriguez began working for the New York City Police Department ("NYPD") in 1992. Am. Comp. ¶ 13, ECF No. 15. She was promoted to the rank of sergeant in 2005, and was transferred to the Internal Affairs Bureau on April 25, 2011. *Id*. ¶¶ 14-15. According to Rodriguez, she was denied a promotion to "Sergeant Special Assignment," which, though not a rank increase, does carry salary or pension benefits. *Id*. ¶¶ 16-20. Rodriguez alleges that there are no set criteria for receiving such a promotion; instead the matter is "discretionary." *Id*. ¶¶ 21-22. She also claims that over the past few years, no African-American women were designated Sergeant Special Assignment, but several identified white sergeants were so designated. *Id*. ¶¶ 23-25.

In Rodriguez's specific case, she claims that on January 18, 2013, she received a Yearly Performance Evaluation of 3.5 on a 5.0 scale (after receiving 3.5 and 4.0 evaluations in 2012 and 2011, respectively), and that these ratings are lower than the ratings of similar white employees, even though Rodriguez has "equal or superior training, education, and experience." *Id*. ¶¶ 27-30. She alleges that the NYPD (and various high-ranking officials) intentionally rate African American women below 4.0 in order to deny them such designations, and also that the NYPD inflates the ratings of white women in order to promote them. *Id*. ¶¶ 31-32.

Rodriguez claims that "about a week" after she received the unfavorable review, she "complained about race and gender discrimination to NYPD EEO Liaison Detective Charmaine Corlette." *Id*. ¶ 39. She alleges that Corlette did not "forward her complaint to the NYPD Office of Equal Employment Opportunity as required by Department policy." *Id*. ¶ 40. Nonetheless, "sometime thereafter," a different NYPD EEO liaison, Sergeant John Martinez, met

2

with William Wassinger, who had conducted Rodriguez's review. He allegedly expressed the view that Wassinger's rating was "artificially lowered because the quality points indicated she should have been rated higher." *Id*. ¶¶ 41-42. Nonetheless, Wassinger refused to reconsider his evaluation of Rodriguez. After complaining about the evaluation, Rodriguez was not considered for the position of Sergeant Special Assignment. In January of 2014, Rodriguez was transferred to the Crime Scene Unit. *Id*. ¶¶ 43-45.

DISCUSSION

A.   *Standard of Review*

In considering a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, a court need not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a party does not "nudge[] [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

As the parties acknowledge, there is some disagreement about whether, in the wake of *Iqbal* and *Twombly*, a plaintiff can plead a plausible claim of employment discrimination without pleading the prima facie case that would be required to win on the merits. As I have held before, I read *Twombly* as expressly reaffirming the holding of *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), that an employment discrimination plaintiff need not

3

plead a prima facie case of employment discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Twombly*, 550 U.S. at 569; *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (discussing relationship).

Nonetheless, even though a plaintiff need not plead facts that amount to a prima facie case, she must still plead facts sufficient to render the allegation plausible – that is, to create a non-speculative inference that prohibited discrimination harmed her. "Although a plaintiff need not plead facts to establish a *prima facie* case of employment discrimination in order to survive a motion to dismiss, the court considers the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, give [d]efendants fair notice of [the plaintiff's] employment discrimination claims and the grounds on which such claims rest." *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 195 (E.D.N.Y. 2010) (internal citations, internal quotation marks, and alterations omitted).

B.  *Rodriguez's Claims*

Rodriguez alleges five distinct claims. The first three are federal: failure to promote, in violation of Title VII; failure to promote, in violation of 42 U.S.C. § 1983; and abuse of authority, also in violation of § 1983. She also alleges that the City's failure to promote her violated New York State Executive Law § 296 and New York City Administrative Code § 8-107.

The first two federal claims are for failure to promote. To show a prima facie case of failure to promote for discriminatory reasons in violation of Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualifications." *Estate of Hamilton v. City of New York,* 627 F.3d 50, 55 (2d Cir. 2010). Rodriguez's claim under § 1983 is similar, but it has some differences: individuals may be sued

4

under § 1983, but to win on the merits, a plaintiff must show intentional discrimination. *See generally Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225-26 (2d Cir. 2004) (detailing differences between employment claims under Title VII and § 1983 or § 1981, and citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977)).

Defendants do not contest that Rodriguez is a member of a protected class. But they argue that Rodriguez has not articulated facts that show, or even come close to showing, the remaining elements of her claim. I agree.

I note at the outset that Rodriguez has already taken the opportunity I afforded her in a February 5, 2014 premotion conference to amend the complaint. Thus, the factual allegations as set forth in the Amended Complaint represent her best shot at stating her claim without discovery. But this best shot has not "nudged [her] claims of invidious discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotation marks and brackets omitted).

The Amended Complaint does not allege any facts that would support an inference that invidious discrimination was the reason that Rodriguez was not promoted. Rodriguez does not provide, for example, anecdotal evidence that her supervisors or evaluators possessed racial animus – let alone that such animus caused her to be passed over for promotion. In similar cases, courts have found the presence or absence of such allegations to be dispositive. For example, in *Hussey v. New York State Dep't of Law/Office of Atty. Gen.*, 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013), the plaintiff's discrimination claims were dismissed where the plaintiff alleged that the employer's stated reason for failing to promote her (a need to improve her writing skill) was pretextual, but the plaintiff offered no facts pointing to a discriminatory reason. By contrast, in *Stewart v. City of New York*, 11 CIV. 6935 CM, 2012 WL 2849779 (S.D.N.Y. July 10, 2012), a member of the NYPD alleged that he received an evaluation of 3.5,

5

preventing his promotion, and that this was part of a pattern of discriminatory activity triggered by the plaintiff's complaints about racially discriminatory overtime assignments; the court denied a motion to dismiss.

I find this case to be much more similar to *Hussey*. Rodriguez barely describes the conversations she had with her supervisors and evaluators, and those conversations do not give rise to a reasonable inference of discrimination. In particular, although the Amended Complaint refers to a "quality points" assessment that is somehow at odds with Rodriguez's 3.5 evaluation, *see id*. ¶¶ 31-32, the Amended Complaint does not explain what quality points are, how one achieves them, and their relationship to the evaluated score. Rodriguez's allegations are even weaker than the plaintiff's in *Hussey*, since they shed no light on the reasons that Rodriguez believes her failure to be promoted was discriminatory. And unlike in *Stewart*, the plaintiff here does not link her sub-4.0 evaluation to other allegations suggesting discrimination.

Of course, an inference of discrimination could arise from numerical disparities rather than from the discriminatory remarks of supervisors. Rodriguez attempts to allege some numerical evidence of a disparity between white and nonwhite candidates. She claims that "over the past few years, although there were eligible African-American females, only Caucasian sergeants were designated 'Sergeant Special Assignment.'" Am. Compl. ¶ 24. She also names three white sergeants who were designated Sergeant Special Assignment "based upon their race and affiliation with former Captain Kenneth Noonan and defendant [David Zimmer]." *Id*. ¶ 25. I find these allegations similar to those in *Mercado v. City of New York*, 13 CIV. 389 PAC, 2014 WL 627035, at *2-3 (S.D.N.Y. Feb. 18, 2014), cited by Defendants here. The *Mercado* court dismissed discrimination claims where the two plaintiff NYPD officers pointed to four non-Hispanic officers who were promoted ahead of them, but offered no facts demonstrating that those officers were similarly situated to the plaintiffs, and alleged no anecdotal or other evidence

6

showing discriminatory intent by the NYPD or its employees. I find Rodriguez's allegations at least as weak. It is insufficient to simply point to non-minority candidates who were promoted without giving further detail about the relative qualifications of the candidates (or other evidence of discriminatory intent). *See, e.g., Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012) ("The law permits a plaintiff to raise a plausible inference of discrimination by alleging preferential treatment given to similarly situated individuals. However, this method is allowed only if the alleged comparators are similarly situated in all material respects.") (internal quotation marks, citations, and brackets omitted). Furthermore, Rodriguez's own complaint seems to offer an alternative, nondiscriminatory reason for the promotions: the promoted candidates' personal affiliations with Noonan and Zimmer.

Since Rodriguez has not alleged facts plausibly showing that discrimination was the cause of her failure to be promoted, it follows that she has not plausibly alleged the intentional discrimination necessary to succeed on her § 1983 claims.

Finally, Rodriguez's state and local claims are brought only under this court's supplemental jurisdiction, not this court's original jurisdiction. *See* Am. Compl. ¶ 3. Having dismissed the federal claims, I decline to exercise that supplemental jurisdiction and dismiss those claims as well. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").[1]

---

[1] Rodriguez's opposition spends several pages explaining why summary judgment should not be granted to the defendants. As Defendants' reply acknowledges, however, Defendants have not moved for summary judgment. Both because it is not sought, and because I have independently dismissed the plaintiff's claims, I need not address the question.

CONCLUSION

For the reasons stated above, Rodriguez's amended complaint is dismissed.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 10, 2014
      Brooklyn, New York